UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel., RANDOLPH PETERSON and TRI-CITY RAILROAD COMPANY, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> PORT OF BENTON COUNTY, et al., <br><br> Defendants. | NO. 2:17-CV-0191-TOR <br><br> ORDER RE: VOLUNTARY MOTION TO DISMISS; REQUEST TO AMEND; AND PARTIAL SUMMARY JUDGMENT |

BEFORE THE COURT is Plaintiffs Randolph Peterson and Tri-City Railroad Company, LLC's Voluntary Motion to Dismiss and Request for Leave to File Amended Complaint (ECF No. 69) and Motion for Partial Summary Judgment (ECF No. 61). The matters were submitted for consideration without a request for oral argument. The Court has reviewed the record and files herein, the completed briefing and is fully informed. For the reasons discussed below, the Motion to Dismiss and Request for Leave to File Amended Complaint (ECF No. 69) is

ORDER RE: VOLUNTARY MOTION TO DISMISS; AMEND; AND PARTIAL
SUMMARY JUDGMENT ~ 1

**granted in part** and the Motion for Partial Summary Judgment (ECF No. 61) is

**denied**.  The Court will address each in turn.

## I.     VOLUNTARY MOTION TO DISMISS; AMEND

Plaintiffs Randolph Peterson ("Peterson") and Tri-City Railroad Company ("TCRY") (1) seek to "dismiss for sixty days" Peterson's claim for tortious interference, nuisance, and negligence and TCRY's claim for nuisance and negligence, and (2) request the Court grant leave "to amend Plaintiffs' Second Amended Complaint to re-assert all temporarily dismissed tortious interference, nuisance, and negligence claims effective 3/20/19 pursuant to Fed. R. Civ. P. 15(a)(2)."  ECF No. 69 at 2-3, 5.  Plaintiffs explain they are moving "to dismiss the state law claims for sixty days" in order to comply with RCW 4.96.020, ECF No. 69 at 3, which forbids bringing claims for damages against a local government entity until sixty days after filing a tort claim form with the state.  Defendants request the Court deny (1) TCRY's motion for leave to reassert its nuisance and negligence claims and (2) "deny Peterson's motion because he has never pleaded any of the claims at issue in his motion."  ECF No. 79 at 3 (emphasis removed).  Plaintiffs have not filed a reply.

Once an opposing party serves either an answer or a motion for summary judgment, the plaintiff may voluntarily dismiss their claims only by stipulation between all the parties who have appeared or by "court order, on terms that the

court considers proper." Fed. R. Civ. P. 41(a). A party may also amend its pleading once as a matter of course within 21 days after serving it, or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave[, which the] court should freely give [] when justice so requires." Fed. R. Civ. P. 15(a)(2). A denial of leave to amend a complaint is reviewed for abuse of discretion, and the "district court acts within its discretion to deny leave to amend when amendment would be futile," among other things. *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 725-26 (9th Cir. 2000)

Peterson seeks to "dismiss for sixty days" his claims for tortious interference, nuisance, and negligence, but Defendants assert the Court should deny Peterson's Motion "[b]ecause he has never pleaded any of the claims at issue in his motion[.]" ECF No. 79 at 8. Plaintiffs did not file a reply to clarify otherwise. Upon review, the Court agrees with Defendants and finds Peterson has not personally pled a claim for tortious interference, nuisance, or negligence. *See* ECF No. 13 at 63-66 (tortious interference), 68 (nuisance), 69 (negligence). Accordingly, the Motion to Dismiss Peterson's claims is **denied as moot**.

Peterson's request to amend the Second Amended Complaint is timely filed according to the Scheduling Order and is therefore **granted**.

As to TCRY, Defendants argue TCRY's claims for nuisance and negligence should be dismissed without leave to reassert the claims because (1) TCRY's nuisance claim is barred by the two-year statute of limitations and (2) TCRY does not state a claim for negligence because TCRY does not "allege any legally recognized tort duty owed" by the Port of Benton County ("the Port"). ECF No. 79 at 9 (emphasis removed).

In the SAC, under the heading "Nuisance – City of Richland and Port of Benton", Plaintiff claims the City of Richland and the Port have unreasonably interfered and obstructed with TRCY's use of its property interest. ECF No. 13 at 68, ¶ 5.44. Defendants argue the claim cannot be asserted because the two-year statute of limitations began to run on October 20, 2014 and expired on the same date in 2016, before Plaintiffs filed this suit in June of 2017 (the state claims were added in the FAC submitted on April 2, 2018). Defendants cite ECF No. 13, ¶ 3.175 for its position that the last act giving rise to a potential nuisance claim occurred on October 20, 2014, when the Port granted the City of Richland a "Railroad and Utility Easement". Upon review of the allegations in the SAC, the Court does not find any act post October 20, 2014 on which Plaintiffs rely for their nuisance claim. Plaintiffs have not filed a reply that could have clarified

ORDER RE: VOLUNTARY MOTION TO DISMISS; AMEND; AND PARTIAL SUMMARY JUDGMENT ~ 4

otherwise. As such, it appears to the Court that the claim is barred by the statute of limitations. Defendants have not filed a motion to dismiss based on the statute of limitations, so it is premature to rule on this issue at this time. The request to dismiss TCRY's nuisance claim is **granted**, and since the Court cannot on this record find that amendment would be futile, the request for leave to reassert the claim is also **granted**.

As to TCRY's negligence claim, Defendants correctly argue they do not owe any legally recognized tort duty to TCRY. ECF No. 79 at 9-10. In the SAC, Plaintiffs assert "[t]he City of Richland and the Port of Benton owed duties to Tri-City Railroad under the Port of Benton/City of Richland contract, as a third-party beneficiary of the 2002 Port of Benton/Tri-City Railroad lease, and as government entities." ECF No. 13 at 69, ¶ 5.47. However, as Defendants point out, "[t]he independent duty doctrine . . . bars recovery in tort for economic losses suffered by parties to a contract unless the breaching party owed a duty in tort independent of the contract[,]" ECF No. 79 at 10 (quoting *Pointe at Westport Harbor Homeowners' Ass'n v. Eng'rs Nw., Inc.* 193 Wn. App. 695, 702-03 (2016)), and "Washington does not recognize a general government entity duty of care" but rather the plaintiff must establish the government owed a duty to them individually. ECF No. 79 at 11 (citing *Washburn v. City of Fed. Way*, 178 Wash.2d 732, 754 (2013); quoting *Sunshine Heifers, LLC. V. Washington State*

ORDER RE: VOLUNTARY MOTION TO DISMISS; AMEND; AND PARTIAL SUMMARY JUDGMENT ~ 5

*Dep't of Agr.*, 188 Wash.App. 960, 966 (2015)).  TCRY does not allege (and did not file a reply to argue) Defendants owed TCRY a duty independent of the contract.  Accordingly, the request to dismiss TCRY's negligence claim is **granted**, and since the Court cannot on this record find that amendment would be futile, the request for leave to reassert the claim is also **granted**.

The court observes that Plaintiff's proposed Third Amended Complaint (ECF No. 69-1) may not adequately remedy the deficiencies noted in this Order and may need to be revised.

## II.     MOTION FOR SUMMARY JUDGMENT

A. **Background**[1]

This case, and the Motion for Partial Summary Judgment in particular, concerns alleged retaliation by the Port against Plaintiff Peterson, through his company TCRY.  Specifically, Plaintiffs complain that the Port "threatened" to file a third-party complaint raising the issue of TCRY's potential tax liability after Peterson filed suit against the Port raising the same issue.  The underlying facts are generally not in dispute—what is at issue is the Port's intent in issuing the alleged "threat": the Port claims it was a legitimate claim based on a legitimate concern

---

[1]      As noted below, the Court must resolve all factual disputes and inferences in favor of the non-moving party on a motion for summary judgment.

prompted by Peterson providing the perfect avenue for addressing such a concern; Peterson claims it was a baseless threat designed to pressure Peterson to drop his suit.

Relevant to this Order, Peterson, through TCRY, leased property from the Port in 2002, giving TCRY (1) exclusive use of land for a "laydown yard," a large warehouse facility, and railroad equipment, and (2) non-exclusive use of approximately 16 miles of "railroad trackage" located in Richland, Washington. *See* ECF Nos. 50-2 (lease agreement); 74 at 2, ¶ 5; 81 at 3, ¶ 5. In return, TCRY is obligated to (1) maintain the "trackage" at its sole cost and expense and (2) pay $2,000.00 per month for the equipment and $2,000.00 per month for the trackage, building, and laydown yard, adjusted to the present value (currently $5,371.80 per month) and (3) pay Leasehold Excise Tax ("LET") and sales tax. ECF No. 73 at 3-4, ¶¶ 8-10. The motion for summary judgment centers on the LET.

1. **Introduction to Leasehold Excise Tax**

The LET is a tax imposed on private entities that lease publicly owned, tax-exempt property. WAC 458-29A-500(1); RCW 82.29A.030(1)(a). LET liability is based on a fixed percentage of the "taxable rent." RCW 82.29A.030(1)(a). For leaseholds that have *not* been renegotiated for ten years or more – which is the case here – "taxable rent" is not necessarily the actual rental costs; rather, the Department of Revenue may calculate the "taxable rent" by considering (1) the

cost of similar rental property and (2) the "fair rate of return on the market value of the property less reasonable deductions . . . ." RCW 82.29A.020(2)(a), (g). In other words, the Department of Revenue will set the taxable rate to the fair market value. The lessor (here, the Port) is responsible for collecting the LET from the lessee (her, TCRY) and remitting it to the Department of Revenue, and can be personally liable for the amount due. WAC 458-29A-500(2). Notably, TCRY only pays LET on the monthly rent, but does not pay LET for costs incurred in maintaining the trackage. ECF No. 76 at 6, ¶ 11.

### 2. Events leading to the "threat"

On August 15, 2016,[2] "Peterson, as an individual taxpayer, filed suit against the State of Washington, Department of Revenue, and the Port [] for alleged violations of Article 8, § 7, and Article 1, § 12, of the Washington State Constitution." ECF No. 61 at 5, ¶ 4; *see* ECF No. 78-5 (complaint). In the complaint, Peterson alleged a claim for "Tax Non Collection" premised on the Port's potential liability for failing to recover LET from the other railroad companies that use the trackage (without compensation) leased by TCRY. *See* ECF No. 78-5 at 13-16, ¶¶ 55-67. As discussed in detail below, the Port later

---

[2]    The Court's previous Order listed the year as 2015 based on what appears to be a typo in the Parties' briefing.

informed Plaintiffs of the Port's intention to file a third-party complaint requesting the Department of Revenue determine the LET owed by TCRY. The Port soon after informed Plaintiffs they were not going to file the claim. Plaintiffs argue this was unlawful retaliation.

Stuart Dezember – the Director of Finance for the Port who manages the Port's approximately 250 leases and is responsible for collecting LET from the Port – provides a narrative leading up to the decision to inform Plaintiffs the Port intended to file a third party complaint. According to Dezember, "[p]rior to 2016, the Port did not have any concerns about TCRY's LET obligations because the Port had not had its trackage appraised and did not know that TCRY's cash rent was significantly less than the fair market rent for the leasehold property." ECF No. 73 at 4, ¶¶ 2-3, 11. In July, 2016, however, the Port received an appraisal of $25,600,000 for the land, real estate, and trackage at issue. ECF No. 73 at 5, ¶ 13. According to Dezember, "[i]t did not immediately occur to [him] in July 2016 that the Port was only collecting LET on monthly rent of $2,532.42[3] for property worth more than $25 million" because he did not get "a chance to sit down and assess the appraisal and its ramifications" at that time. ECF No. 73 at 5, ¶ 14.

---

[3]     The estimated valuation did not include the equipment; this figure refers to the portion of rent paid towards the property subject to the valuation.

ORDER RE: VOLUNTARY MOTION TO DISMISS; AMEND; AND PARTIAL SUMMARY JUDGMENT ~ 9

In August, Dezember learned that "Peterson was suing the Port and the DOR claiming the Port had under-collected LET for the Richland Trackage" and "at that moment [he] realized that, given the appraisal [he] had recently received, the Port could be held liable to the DOR for not collecting LET based on the fair market value[4] of TCRY's leasehold." ECF No. 73 at 5, ¶ 14.  According to Dezember, he "was so concerned" that he sent an e-mail to TCRY on August 17, 2016 with the appraisal attached "to inform it about both the appraisal and to voice my concern that the DOR would scrutinize TCRY's rent and corresponding LET obligations, due to the value of the leasehold." ECF No. 73 at 5, ¶ 15.  In the e-mail, Dezember wrote: "[a]s a result of concerns expressed to the Department of Revenue related to the 'free use' of the Port railroad, the amount of rent paid by TCRY will come under increased scrutiny as well." ECF No. 77-1 at 3.  Dezember relayed his concern that "[t]he monthly rent currently paid by TCRY seems extremely low in comparison to the value of the tracks and land ($25M), the value

---

[4]     Dezember worked with the Washington Department of Revenue during audits of the Port, which included verifying the Port's LET collections; Dezember was personally aware that the Department of Revenue will set a taxable rent based on fair market value in certain circumstances, despite the actual cash rent (as noted above).  ECF No. 73 at 3, ¶ 6.

of an 80,000 square foot building ($7M) and the value of the rail maintenance equipment ($1M)" and that "[t]he Department of Revenue could easily determine that the rent the Port is receiving is not market rent . . . ." ECF No. 77-1 at 3. On September 9, 2016, the Port's counsel (Thomas A. Cowan) sent a letter to Peterson and TRCY's then-counsel, again outlining the Port's (alleged) concern that it could be held liable for TRCY's apparent underpayment of its LET obligations based on the fair market value of the leasehold.

Around this time, Dezember calculated what he thought the "taxable rent" would be based on the fair market rental value of TCRY's leasehold (excluding the railroad equipment). ECF No. 73 at 6, ¶ 16. Dezember determined a (conservative) rental rate for TCRY's leasehold (excluding equipment) was $1,205,589 per year, which amounts to approximately $1 million dollars in unpaid LET over the previous six years (which is how far back the Department of Revenue will collect, according to Dezember). ECF No. 73 at 6-7, ¶¶ 16-18. Based on the potential for outstanding LET and the Port's duty to collect the LET, the Port then explored seeking a final declaratory resolution as to the LET taxes given (1) the Washington Department of Revenue was already involved in the litigation and (2) Plaintiff had raised the LET issue in that law suit—putting the amount of LET paid by TCRY to the PORT under a potential spot light. *See* ECF No. 72 at 8; 34 at 4-5, ¶¶ 9-11.

3. **The "threat"**

On September 28, 2016, counsel for the Port (Mr. Crichton) sent an e-mail to Plaintiffs with a copy of the Port's answer along with a third-party complaint against TCRY and a cross-claim against the Department of Revenue. In the e-mail, Mr. Crichton (again) relayed the concern that TCRY owes outstanding LET and highlighted the fact that the current suit provided a proper forum for determining the issue:

> I am attaching hereto the Port's Answer to Mr. Peterson's Amended Complaint. You will see the Port also has also pleaded a third-party complaint against TCRY and cross-claim against the Department of revenue (sic). By the Port's calculations, including interest and penalties, TCRY has underpaid the leasehold excise tax by more than a million dollars over the past six years. Under the applicable statute, the Port can be held liable for that under-payment. The Port believes the pending lawsuit provides a good forum to address this concern, particularly since Mr. Peterson has already made the Department of Revenue a party to the action and it is in a position to weigh in on TCRY's liabilities under the governing statute. The Port believes by being proactive on this issue, it can best avoid any later finger pointing by the Department of Revenue arising from TCRY's under-payment of the LET.
>
> I have instructed my legal assistant [] to hold off on serving TCRY or the Department of Revenue and to refrain from filing the pleading for seven days so as to provide you ample time to confer with Mr. Peterson. To be clear, we intend to serve and file the pleading on Thursday, October 6 if the case is pending on that date.

ECF No. 25-1 at 3.

On October 6, 2016, Mr. Crichton e-mailed Plaintiffs the following: "[a]s I received no response to my email on September 28[,] . . . we will go ahead and file

ORDER RE: VOLUNTARY MOTION TO DISMISS; AMEND; AND PARTIAL SUMMARY JUDGMENT ~ 12

the Answer and Third-Party Complaint." ECF No. 25-1 at 2. The next day, however, Mr. Crichton informed Plaintiffs that "[t]he Port has decided to hold off, for now, on filing the third-party complaint. Sorry for the false alarm." ECF No. 25-1 at 2.

4. **Procedural history**

Plaintiffs brought this action in June 5, 2017, asserting a *Qui Tam* action under 31 U.S.C. §§ 3729-3737 based on alleged "false or fraudulent claims" and "false records and statements" used "to obtain payment (and double payment or approval for payment in violation of the Federal False Claims Act . . . ." ECF No. 1 at ¶ 5.1. Because Plaintiffs asserted a Federal False Claims Act cause of action, the United States of America was provided with notice and an opportunity to intervene. *See* ECF No. 2. On May 25, 2018, the United States of America declined to intervene. ECF Nos. 9; 10.

Plaintiffs filed an Amended Complaint (ECF No. 6) on April 2, 2018, and a Second Amended Complaint (ECF No. 13) on June 13, 2018.[5] In the First Amended Complaint, Plaintiffs reasserted the original *Qui Tam* claim and asserted new actions: (1) a *Qui Tam* retaliation claim, *see* ECF No. 6 at 47-48, ¶¶ 4.6-4.13; (2) 42 U.S.C. § 1983 claims based on Defendants' alleged (a) violation of

---

[5] The amended complaints were submitted without leave from the Court.

ORDER RE: VOLUNTARY MOTION TO DISMISS; AMEND; AND PARTIAL SUMMARY JUDGMENT ~ 13

Plaintiffs right to "free expression assembly, procedural and substantive due process, to just and timely compensation for property condemned privacy, and to equal protection", ECF No. 6 at 48, ¶ 4.16, (b) retaliation against Plaintiff for exercising statutory rights, ECF No. 6 at ¶ 4.31, including an alleged "threat" to collect taxes not actually owed, ECF No. 6 at 54, ¶ 4.39, and (c) for Defendants "Physical Taking", "Regulatory" Taking, and "Oppressive Pre-Condemnation activity[,]" ECF No. 6 at 57-60, ¶¶ 4.46-4.77; and (3) state law claims "related to *qui tam* retaliation", ECF No. 13 at 63, based on tortious interference with business expectancy, tortious interference with Tri-City Railroad's lease, third-party beneficiary damages resulting from a breach of contract between City of Richland and the Port of Benton, trespass, unjust enrichment, nuisance, and negligence, ECF No. 6 at 60-68, ¶¶ 5.1-5.55. In the Second Amended Complaint, Plaintiff merely adds more detail to the underlying allegations, but the causes of action were not altered. *Compare* ECF No. 6 *with* ECF No. 13.

Now, Peterson and TCRY request the Court enter partial summary judgment holding the Port "liable for retaliating against Peterson and TRCY (for associating with Peterson) for Peterson's petition against the Port for unconstitutional conduct." ECF No. 61 at 2.

//

//

B. **Standard of Review**

A movant is entitled to summary judgment if "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The moving party bears the "burden of establishing the nonexistence of a 'genuine issue.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." *Id.*

Per Rule 56(c), the parties must support assertions by: "citing to particular parts of the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or than an adverse party cannot produce admissible evidence to support the fact." Only admissible evidence may be considered. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002). The nonmoving party may not defeat a properly supported motion with mere allegations or denials in the pleadings. *Liberty Lobby*, 477 U.S. at 248. The "evidence of the non-movant is to be believed, and all justifiable inferences are to

be drawn in [the non-movant's] favor." *Id.* at 255. However, the "mere existence of a scintilla of evidence" will not defeat summary judgment. *Id.* at 252.

C. **Discussion**

Plaintiffs request the Court enter partial summary judgment against the Port "holding the Port liable for retaliating against Peterson and TCRY (for associating with Peterson) for Peterson's petition against the Port for unconstitutional conduct." ECF No. 61 at 2. The Crux of Plaintiff's argument is that the Port retaliated against Peterson and TCRY by "threatening" to file an answer that included "a third-party complaint against TCRY and cross-claim against the Department of [R]evenue." *See* ECF Nos. 61 at 3; 78-6 at 2. Defendants oppose the motion, arguing "[t]he Port's proposed third-party complaint was a responsible and appropriate response to Peterson's lawsuit, not retaliation against him for filing the lawsuit." ECF No. 72 at 11. At least under the lens of summary judgment, the Court agrees with Defendants.

"To state a claim for First Amendment retaliation against a government official, a plaintiff must demonstrate that '(1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.'" *Mulligan*

*v. Nichols*, 835 F.3d 983, 988 (9th Cir. 2016) (quoting *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010)).

> Retaliation claims involving government speech warrant a cautious approach by courts. Restricting the ability of government decisionmakers to engage in speech risks interfering with their ability to effectively perform their duties. It also ignores the competing First Amendment rights of the officials themselves. The First Amendment is intended to "preserve an uninhibited marketplace of ideas in which truth will ultimately prevail." *McCullen v. Coakley*, 573 U.S. 464, 476 (2014) (quoting *FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 377 (1984)). That marketplace of ideas is undermined if public officials are prevented from responding to speech of citizens with speech of their own. *See Bond v. Floyd*, 385 U.S. 116, 136 (1966) ("The interest of the public in hearing all sides of a public issue is hardly advanced by extending more protection to citizen-critics than to legislators.").

> In accordance with these principles, we have set a high bar when analyzing whether speech by government officials is sufficiently adverse to give rise to a First Amendment retaliation claim.

*Mulligan v. Nichols*, 835 F.3d 983, 989 (9th Cir. 2016) (internal citations altered)

Defendants argue, among other things, that Plaintiffs have failed to demonstrate that their "protected activity was a substantial motivating factor in the defendant's conduct—e.g. that there was a nexus between the defendant's actions and an intent to chill speech." ECF No. 72 at 10-11. *See Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016); *see Greenwich Citizens Comm., Inc. v. Ctys. of Warren & Washington Indus. Dev. Agency*, 77 F.3d 26, 30 (2d Cir. 1996) ("[F]or a claim of a First Amendment violation arising in the context of litigation, a governmental entity alleged to have chilled a litigant's

freedom of speech by filing counterclaims in response to a complaint must be shown to have acted with retaliatory intent."). Whether the defendant acted with retaliatory intent is a question of fact that "involv[es] a person's state of mind[,]" and resolution of such issues are often "inappropriate [on] summary judgment." *See Braxton–Secret v. Robins Co.,* 769 F.2d 528, 531 (9th Cir. 1985). Plaintiffs have not met their burden.

Plaintiffs argue the "threat" – the Port informing Plaintiffs that the Port intended to file a third party complaint – was (1) a strategy "designed to chill Peterson's right to free speech and right to petition his government" and (2) "made with full knowledge that no taxes were owed by TCRY." ECF No. 61 at 6 (citing ECF No. 2 at 6, ¶¶ 20-21), 14. In support, Plaintiffs cite paragraphs 20 and 21 from their Statement of Facts. ECF No. 61 at 6. However, Paragraph 20 merely recites a statement from Crichton that the Port decided not to file the third-party complaint. ECF No. 62 at 6, ¶ 20. Paragraph 21, on the other hand, provides:

> [The] Port and its agents admitted the alleged $1,000,000 in back-leasehold taxes were made with full knowledge that no taxes were owed by TCRY; that the alleged $1,000,000 in back-leasehold taxes was a product of attorney-client privilege negotiations; and that the threat was a merely 'a strategy that we talked about the possibility of going with this. . . (Exhibit 7).

ECF No. 62 at 6, ¶ 21. However, Plaintiffs only generally cite to "Exhibit 7" (found at ECF No. 78-7) – a 53-page deposition – without any pin cite. ECF No. 62 at 6, ¶ 21.

ORDER RE: VOLUNTARY MOTION TO DISMISS; AMEND; AND PARTIAL SUMMARY JUDGMENT ~ 18

After combing through the deposition, the Court found a statement by Scott D. Keller, Executive Director for the Port, that suggests the Port does not take the "position that there is tax owing of more than a million dollars from TCRY." *See* ECF No. 78-7 at 51. During the deposition, counsel for Plaintiffs asked Keller the following: "is it the Port's position that there is tax owing of more than a million dollars from TCRY?" ECF No. 78-7 at 51. Keller responded "No." ECF No. 78-7 at 51. However, counsel for Defendants thereafter noted that Keller is a "fact witness" and that, "[t]o the extent you're asked about Port positions going forward, it would help if you make clear whether the Port has adopted – formally adopted a position on something[.]" ECF No. 78-7 at 51-52. Counsel for Plaintiffs did not ask for clarification. Keller later clarified in his declaration that "[t]he Port was, and remains, concerned the State of Washington could contend the Port is liable for failing to collect sufficient LET from TCRY" and "[a]t no time did the Port ever intend to retaliate against Mr. Peterson or TCRY, nor did it ever threaten Mr. Peterson or TCRY." ECF No. 74 at 6, ¶ 15. Given the uncertainty surrounding the initial statement in the deposition, along with the varying interpretations of the statement (for example, it would be true if TCRY believed *less* than $1 million is due), the Court cannot say the Port raised the issue of TCRY's LET obligations in bad faith—especially in light of the surrounding circumstances, as discussed below.

Plaintiffs attempt to make much ado about statements on behalf of the Port that the third-party complaint would be filed if the lawsuit was still "pending" and the fact that the Port did not submit the third-party complaint as a matter of "strategy". However, if the action was no longer pending, filing a third-party complaint would be of no use. This statement is of no evidentiary value for the issue at hand. Further, even if the Port decided to raise the issue and then not file the third-party complaint as a matter of "strategy", it does not mean the underlying claim lacked merit or was otherwise asserted in bad faith—indeed, Parties withhold certain claims for a litany of valid reasons, many of which are legitimate and have nothing to do with the merits of the claim. Further, Plaintiffs assert the Port is using the power of taxation to retaliate against Peterson, but the Port does not impose any tax on TCRY; the Port simply collects the LET on behalf of the Department of Revenue. Rather, the Port simply informed Plaintiffs of their intention to file "a declaratory action asking the state court to determine whether TCRY owed additional LET on its maintenance expenditures and if so, how much was owed." ECF No. 72 at 14, ¶ 2. Plaintiffs also argue that "[t]here is no justification other than retaliation for the attempted additional tax assessment since the Port treated TCRY differently than other similarly-situated Port lease-holders [] when it broke from its usual course of business of collecting leasehold excise taxes." ECF No. 61 at 16. In other words, Plaintiffs argue the Port's concern (that

it is not collecting enough LET from TCRY) is a farce since the Port has not attempted to collect the (potentially) additional LET, but this is pure speculation. On summary judgment, the Court cannot presume the Port's *concern* was not genuine just because the Port is not acting on the concern in failing to collect the disputed amount of taxes.

Ultimately, Plaintiffs have failed to meet their burden in demonstrating summary judgment is proper because Plaintiffs have failed to establish the Port had a retaliatory intent. Based on the record, the Port raised a facially plausible concern that TCRY is, indeed, not paying a sufficient amount of LET—on its face, the cost of rent (less than $6,000.00 per month) is grossly disproportionate to the value of the property (at least $25M) at issue. Notably, TCRY does not dispute the figures nor does TCRY attempt to demonstrate the underlying legal argument – that additional LET is owing – is not legally sound. Further, Defendants have adequately explained the timing between Peterson filing suit and the alleged "threat", as Peterson raised the issue of LET taxes in the 2016 suit and included the Department of Revenue as a party—placing the Port and TCRY's relationship under the proverbial spot light.

//

//

//

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiffs Randolph Peterson and Tri-City Railroad Company, LLC's Voluntary Motion to Dismiss and Request for Leave to File Amended Complaint (ECF No. 69) is **GRANTED in part**.

2. Plaintiffs Randolph Peterson and Tri-City Railroad Company, LLC's Motion for Partial Summary Judgment (ECF No. 61) is **DENIED**.

The District Court Executive is directed to enter this Order and furnish a copy to the parties.

**DATED** March 21, 2019.



THOMAS O. RICE
Chief United States District Judge

ORDER RE: VOLUNTARY MOTION TO DISMISS; AMEND; AND PARTIAL SUMMARY JUDGMENT ~ 22