UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel., RANDOLPH PETERSON, individually and as relator; TRI-CITY RAILROAD COMPANY, LLC, a Washington limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> PORT OF BENTON COUNTY, et al., <br><br> Defendants. | NO. 2:17-CV-0191-TOR <br><br> ORDER APPROVING *QUI TAM* ATTORNEY FEES |

BEFORE THE COURT is the Port of Benton's accounting for attorney fees

in relation to the *Qui Tam* claims. ECF Nos. 148, 213. Plaintiffs do not object to

the amount requested, but rather request the Court not require payment until final

judgment is entered on the remaining claims. ECF No. 218. The Court – having

reviewed the record and briefing – is fully informed. For the reasons discussed

below, the Court approves the requested attorney fees award and denies Plaintiffs'

request to defer payment.

ORDER APPROVING *QUI TAM* ATTORNEY FEES ~ 1

## BACKGROUND

By way of background, Plaintiffs Randolph Peterson and Tri-City Railroad Company, LLC, brought this action asserting only a *Qui Tam* action based on two legal theories. ECF No. 1. Plaintiffs thereafter filed the First Amended Complaint asserting a plethora of other, unrelated causes of action and filed the Second Amended Complaint adding more substance to their claims. ECF Nos. 6; 13. After obtaining approval from the Court, Plaintiffs filed a Third Amended Complaint. ECF No. 124. The Port objected, arguing the Third Amended Complaint went beyond what was authorized by the Court; the Court agreed and struck the complaint. ECF Nos. 133; 165. Plaintiffs thereafter filed the Fourth Amended Complaint. ECF No. 167.

On August 8, 2019, the Port moved for summary judgment on the *Qui Tam* claims and requested attorney fees. ECF No. 148. The Court granted the motion as to the *Qui Tam* claims and the request for attorney fees under 41 U.S.C. § 3730. ECF No. 196. The Port has since provided an accounting of the fees related to defending the *Qui Tam* claims. ECF No. 213

## GOVERNING LAW

31 U.S.C. § 3730(d)(4) provides: "If the Government does not proceed with the action and the person bringing the action conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant

prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment."

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Id.* "The district court [] should exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Id.* at 434 (citation omitted).

"The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Id.* "Although hours claimed or spent on a case should not be the sole basis for determining a fee, [citation omitted], they are a necessary ingredient to be considered. The trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities." *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989); *Hensley*, 461 U.S. at 434, n.9 ("The district court also may consider other factors

identified in *Johnson v. Georgia Highway Express, Inc.*").  Other factors include

the novelty and difficulty of the questions, the skill requisite to perform the legal

service properly, the customary fee, the amount involved, and the results obtained.

*Johnson*, 488 F.2d at 717-719.

The party seeking an award of fees should submit evidence supporting the

hours worked and rates claimed." *Hensley*, 461 U.S. at 433.  The fee applicant

"should make a good faith effort to exclude from a fee request hours that are

excessive, redundant, or otherwise unnecessary . . . ." *Id.*  "The applicant should

exercise 'billing judgment' with respect to hours worked [] and should maintain

billing time records in a manner that will enable a reviewing court to identify

distinct claims." *Id.* at 437.

> It is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.  But without some fairly definite information as to the hours devoted to various general activities, e. g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e. g., senior partners, junior partners, associates, the court cannot know the nature of the services for which compensation is sought.

*Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (quoting *Lindy Bros.*

*Builders of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167

(3d Cir. 1973)).  "Where the documentation of hours is inadequate, the district

court may reduce the award accordingly." *Hensley*, 461 U.S. at 433.

"[T]he district court has discretion in determining the amount of a fee

award." *Id.* at 437. "It remains important, however, for the district court to provide a concise but clear explanation of its reasons for the fee award." *Id.*

## FEE REQUEST

The Port has submitted a declaration with supporting material in which the Port requests attorney fees in the amount of **$102,980.25**. The Court previously approved of the hourly rate requested for the attorney fees in its Order Granting Rule 37 Attorney Fees in Part and the Court adopts that portion of the Order. ECF No. 215. The question is whether the requested amount is otherwise reasonable.

Counsel for the Port separated the requested fees into three categories to account for time billed for defending the *Qui Tam* claim. First, there is time billed for work pertaining only to the *qui tam* action—amounting to a request of **$63,398.50**. ECF No. 213 at 3-4, ¶ 6. Second, there is time billed for work where the narrative did not cleanly separate time spent defending the *qui tam* action as opposed to addressing the other claims—amounting to a request of **$12,943.50**. ECF No. 213 at 4-5, ¶¶ 8, 10. For this category, Mr. Crichton subtracted the estimated time spent on the other task(s). ECF No. 213 at 4, ¶ 8. Crichton asserts that he "was conservative with these entries and subtracted more time than what [he] and [his] colleagues believe was likely spent on the other task(s)." Mr. Crichton represents entries were not included if they "could not accurately estimate the time spent on other case-related tasks . . . ." ECF No. 213 at 4, ¶ 8.

ORDER APPROVING *QUI TAM* ATTORNEY FEES ~ 5

Third, there is time billed for work that "was simply not possible to segregate out . . . because of the nature of the legal work", such as "reviewing, parsing, and analyzing" the Plaintiff's complaint and four amended complaints, drafting answers, work regarding initial disclosures, "wading through and analyzing [P]laintiffs' hundreds of thousands of pages of document production", reviewing expert reports, drafting discovery requests and responses, and overall case planning and strategy. ECF No. 213 at 5-6, ¶ 11 ("for example, how can one segregate by claim the time spent reviewing a dump of documents that were not produced separately by issue?"). Mr. Crichton requests 25 percent of the total fees for this category, which he believes is a conservative estimate of the portion of work devoted to the *qui tam* claims—amounting to a request of **$26,638.25**. ECF No. 213 at 5-6, ¶ 11.

Mr. Crichton notes that the average billing rate is "under $255 per hour" and adds: "To put into context the fee request, at this point, the Port has incurred total attorneys' fees exceeding **$600,000** in defending the Port Defendants against the claims asserted by plaintiffs in connection with this lawsuit." ECF No. 213 at 8, ¶ 18.

**DISCUSSION**

The Court finds the requested amount represents a reasonable calculation of attorney fees in light of the nature of the issues, the interests at stake, the work

performed, and the results obtained.  Notably, Plaintiffs also do not object to the amount requested.  ECF No. 218.

      1.  **Nature of the issues; Interests at stake**

This is not a simple slip and fall case where limited money damages are at stake.  Addressing the issues underlying the *Qui Tam* action required technical knowledge of railroad law, the federal False Claims Act and a review of actions, contractual agreements, and court/agency decisions spanning two decades.  Further, the stakes were high in terms of both monetary damages and reputation, among other potential repercussions (including potential criminal charges, *see* 18 U.S.C. § 287).  Namely, Plaintiffs sought millions of dollars in damages and the Port was otherwise in jeopardy of losing an untold amount in grants, tax burdens, etc. based on the alleged fraudulent activity.  *See* 31 U.S.C. § 3729(a)(1)(G) (providing for a "civil penalty of not less than $5,000 and not more than $10,000 . . . plus 3 times the amount of damages which the Government sustains" for violations of the False Claims Act).  Moreover, Plaintiffs accused the Port of defrauding the federal government (and the State of Washington) and lying to multiple entities—which are serious charges as a matter of reputation and legal liability.  As a result, this is a case where the Port needed, and was entitled to, a Cadillac defense.  *Cf. Berryman v. Metcalf*, 177 Wash. App. 644, 662 ("the defendant is not required to pay for a Cadillac approach to a Chevrolet case").

## 2. **Work performed; Results obtained**

Counsel for the Port expended an amount of time and effort commensurate with the importance of the matter. Plaintiffs litigated the case aggressively from the start and created a great deal of work for counsel for the Port—largely as a result of Plaintiffs' submitting voluminous materials with their pleadings, motions (while often failing to include a pin cite), and disclosures. Relevant to the *Qui Tam* claims, the Port's work included: reviewing Plaintiffs' Complaint and four amended complaints (all of which contained numerous exhibits), ECF Nos. 1; 6; 13; 124; 167; successfully defending against Plaintiffs' attempt to disqualify the Port's counsel, ECF No. 24; submitting answers and counterclaims (and amended answers), ECF Nos. 30; 39; 42; 178; defending against Plaintiffs' motion to strike the Port's affirmative defenses, ECF Nos. 40; 44; successfully moving to strike Plaintiffs' Third Amended Complaint, ECF Nos. 124; 133; sifting through thousands of pages of unorganized disclosures, numerous declarations, and hundreds of exhibits; propounding and responding to discovery requests; conducting depositions; and bringing and defending a lengthy, well-written motion for summary judgment on Plaintiffs' *Qui Tam* claims, among other work required for preparing and planning for litigation and motions indirectly related to the *Qui Tam* claims. While not all this work pertained directly to the *Qui Tam* action, counsel for the Port adequately, and quite generously in some instances, discounted

their time submitted to account for this.

The Court notes that counsel for the Port spent a significant amount of time preparing for and defending their motion for summary judgment for the *Qui Tam* claims.  However, the time spent is justified.  The motion was 51 pages long and included four detailed declarations with numerous attachments and a detailed, 41-page statement of facts.  Although the motion was lengthy, it was concise and raised numerous meritorious arguments, nearly all of which the Court explicitly adopted.  The reply memorandum was 13 pages and the attached statement of facts was 41 pages (which directly addressed Plaintiffs' statement of facts and was not simply duplicative of the statement included with the motion).  ECF No. 180.  As noted above, the issues addressed were relatively complex and involved a niche area of law.  Further, the work resulted in high-quality briefing and oral argument and led to complete success on the merits.

The hours requested in the first and second category otherwise represent a reasonable amount of time billed in light of the above-mentioned considerations.  While counsel for the Port billed for time on work regarding issues that were not ultimately raised – such as standing, statute of limitations, etc. – these were reasonable inquiries in defending the action.  There is also time billed for a motion to dismiss that was not submitted, but the work necessarily contributed to the motion for summary judgment.

1  The Court also finds the request for 25 percent of the time billed for the non-

2  segregable work is reasonable.  As noted above, much of the work performed that

3  was not limited to work on the *Qui Tam* claims was necessary to address any of the

4  claims—such as conducting depositions and reviewing the voluminous,

5  unorganized, disclosures.  Importantly, the financial and other interests at stake

6  make it reasonable to devote significant time to the case for work that generally

7  applied to all claims.  The court further notes that a reduction to 25 percent for

8  many of the entries appears to be a generous discount considering some of the

9  narratives provided for the work.  This adequately offsets any other requests that

10  potentially include excess time or where the time requested was otherwise

11  questionable.

## TIMING FOR PAYMENT

13  Plaintiffs request the Court not require immediate payment of the attorney

14  fees, reasoning:

> [T]he lease between TCRY and the Port of Benton contains a fee-shifting provision (ECF No. 169-19, pg. 13, ¶ 17), and thus, the award of attorney fees ultimately entered by the Court against Plaintiffs and in favor of the Port of Benton should be subject to offset and imposed only upon final judgment.  Accordingly, Plaintiffs request the Court refrain from certifying as final the Port's award of attorney fees pursuant to FRCP 54(b).

19  ECF No. 218 at 2-3.  Defendants object to the request to delay, asserting:

> The only authority Plaintiffs cite to is Fed. R. Civ. P. 54(b), but that rule concerns the finality of judgments in cases involving multiple claims or

ORDER APPROVING *QUI TAM* ATTORNEY FEES ~ 10

parties.  It does not, as Plaintiffs appear to argue, prohibit this Court from issuing an order awarding fees to the Port and directing payment of fees prior to entry of a final judgment in this action.

Likewise, nothing in 31 U.S.C. § 3730(d)(4) requires the Court to defer a fee award pending resolution of unrelated, independent contract claims or counterclaims, nor does the statute contemplate an offset of an award against potential future liabilities of the prevailing party.  And Plaintiffs offer no applicable authority in support of either proposition.

ECF No. 226 at 3.

The Court will not defer ordering payment of the award.  The Port is entitled to the attorney fees it expended and there is no reason for delay.  No issues remain concerning the *Qui Tam* claims.  These claims are easily separable from all other issues in the case.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  The Port of Benton's Motion and Accounting for Attorney Fees in relation to the *Qui Tam* claims, ECF Nos. 148, 213, are **GRANTED**.

2.  Plaintiffs are ordered to pay attorney fees to Defendant the Port of Benton in the amount of **$102,980.25,** plus statutory interest accruing pursuant 28 U.S.C. § 1961 at the rate of 1.59% per annum.

3.  Pursuant to Fed. R. Civ. P. 54(b), the Court directs the Clerk of Court to enter final judgment as to the Court's "Order Granting Defendant the Port Of Benton's Motion for Partial Summary Judgment Re: *Qui Tam*

Action" at ECF No. 196 and this "Order Approving *Qui Tam* Attorney

Fees" as the Court determines there is no just reason for delay.

4. The Clerk of Court shall terminate the United States of America as

Plaintiff in the docket of this case, as no *Qui Tam* claims remain.

The District Court Executive is directed to enter this Order, enter a Final

Judgment as to the *Qui Tam* claims and furnish copies to the parties.  The file

remains **OPEN** for the other pending claims.

**DATED** December 6, 2019.



THOMAS O. RICE
Chief United States District Judge