UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RANDOLPH PETERSON, individually; TRI-CITY RAILROAD COMPANY, LLC, a Washington limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>PORT OF BENTON COUNTY, et al.,<br><br>Defendants. | NO. 2:17-CV-0191-TOR<br><br>ORDER GRANTING MOTIONS FOR PARTIAL SUMMARY JUDGMENT RE: TORTIOUS INTERFERENCE AND FIRST AMENDMENT RETALIATION |

BEFORE THE COURT is Defendant City of Richland's Motion for Summary Judgment Re: Tortious Interference (ECF No. 199) and Defendants the Port of Benton and Scott D. Keller's Motion for Partial Summary Judgment Re: First Amendment Retaliation (ECF No. 209). Telephonic argument was heard on December 19, 2019. The Court – having reviewed the file, the completed briefing and heard oral argument from the parties – is fully informed. For the reasons discussed below, the Motions (ECF Nos. 199; 209) are **granted**.

ORDER GRANTING MOTIONS FOR PARTIAL SUMMARY JUDGMENT RE: TORTIOUS INTERFERENCE AND FIRST AMENDMENT RETALIATION ~ 1

## STANDARD OF REVIEW

A movant is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The moving party bears the "burden of establishing the nonexistence of a 'genuine issue.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." *Id.*

Per Rule 56(c), the parties must support assertions by: "citing to *particular parts of the record*" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or than an adverse party cannot produce admissible evidence to support the fact." (emphasis added). Only admissible evidence may be considered. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002). The nonmoving party may not defeat a properly supported motion with mere allegations or denials in the pleadings. *Liberty Lobby*, 477 U.S. at 248. The "evidence of the non-movant is to be believed, and all justifiable inferences are to

be drawn in [the non-movant's] favor." *Id.* at 255. However, the "mere existence of a scintilla of evidence" will not defeat summary judgment. *Id*. at 252.

## TORTIOUS INTERFERENCE

A. **Background**

The relevant facts are not in dispute. In short, in 2011, the City of Richland (the "City") and Union Pacific Railroad ("UP") entered into a Standard Form Railroad Track Use Agreement ("SFRTUA") governing the use of a track known as the Horn Rapids Spur owned by the City. The agreement included terms requiring UP and its agents to not oppose the Center Parkway Crossing—a planned railroad crossing over trackage leased by Plaintiff Tri-City Railroad Company, LLC, ("TCRY") which the City had been working toward since early 2001. *See* ECF No. 108 at 3-4. At this time, TCRY operated as a handling carrier for UP, which thereby involved TCRY operating on the City-owned Horn Rapids Spur. *See* ECF No. 199 at 5.

Despite UP's agreement that its agents would not oppose the Center Parkway Crossing project, TCRY – an agent of UP as its handling carrier – continued to oppose the crossing. ECF No. 199 at 5-6. As a result, the City informed UP that it was in breach of the SFRTUA. ECF No. 199 at 6-7. UP attempted to secure TCRY's non-opposition, but TCRY demanded costs and fees incurred over the past decade pertaining to Center Parkway from the City as a

condition of its non-opposition. ECF Nos. 199 at 7; 200 at 13, ¶ 40; 228 at 8, ¶ 22. The City objected to the request and TCRY did not change its stance. ECF No. 228 at 8-9, ¶¶ 24-28. Ultimately, UP canceled its contract with TCRY. ECF No. 228 at 10, ¶ 30-31.

B. **Discussion**

The City argues that, even if the elements of tortious interference are met (a point it does not concede), the actions were privileged because the City was merely exercising its right to demand performance under an agreement with UP. Plaintiffs, on the other hand, argue that the "City utilized its SFRTUA with UP for the sole purpose of destroying TCRY's relationship with UP and shippers along the Horn Rapids Industrial Spur." ECF No. 228 at 17. The City is correct and Plaintiffs' argument is irrelevant (and unsupported by the facts).

"The elements of the tort of interference with a business expectancy are: (1) existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy by the alleged interfering party; (3) intentional interference which induces or causes breach or termination of the relationship or expectancy; and (4) resultant damage." *Plumbers & Steamfitters Union Local 598 v. Washington Pub. Power Supply Sys.*, 44 Wn. App. 906, 920 (1986) (citing *Sea-Pac Co. v. United Food & Comm'l Workers Local 44*, 103 Wash. 2d 800, 805 (1985). Even if all four elements are present, "interference is justified as a matter

ORDER GRANTING MOTIONS FOR PARTIAL SUMMARY
JUDGMENT RE: TORTIOUS INTERFERENCE AND FIRST
AMENDMENT RETALIATION ~ 4

of law if the interferer has engaged in the exercise of an absolute right equal or superior to the right which was invaded." *Id.* (citing *Brown v. Safeway Stores, Inc.*, 94 Wash.2d 359, 375 (1980); *Topline Equip., Inc. v. Stan Witty Land, Inc.*, 31 Wash.App. 86, 93 (1982)). "An absolute right exists only where a person has a definite legal right to act, without any qualification." *Id.* (quoting *Topline*, 31 Wash. App. at 94). When such an "absolute right" exists, the alleged interference is "legally justified" and the "motivations are irrelevant". *Washington Const., Inc. v. Sterling Sav. Bank*, 163 Wash. App. 1027, 2011 WL 4043579, at *14 (2011); *O'Brien v. W. Union Tel. Co.*, 62 Wash. 598, 603, 114 P. 441, 442 (1911). In particular, Washington has recognized the "absolute right" to exercise ones clearly defined contractual rights. *See Sterling*, 2011 WL 4043579, at *14 (contractual right to cease loan advances upon default was an "unqualified right", which is a "recognized privilege negating any improper interference"; "because the interference was legally justified, Sterling's motivations are irrelevant for purposes of this issue"); *O'Brien*, 62 Wash. at 603 (lessor had absolute right to request termination of employee of lessee pursuant to express contractual provision).

      The case of *O'Brien* is on point. In *O'Brien*, a newspaper leased a wire from a telegraph company; the lease agreement "expressly provided that the operators so employed [under the newspaper] should be satisfactory to the telegraph company[.]" *Id.* at 602. Upon discovering the plaintiff-operator was employed by

the newspaper, the telegraph company requested his termination and the newspaper complied with the request. *Id.* The employee sued the telegraph company for tortious interference, but the Washington Supreme Court determined the telegraph company's conduct was privileged as a matter of law:

> The property which the respondent was employed to operate was the property of the appellant, and under all authority it was competent for the appellant on leasing it to make it a condition of the contract that no one should be employed to operate it who was not satisfactory to the appellant. And, having power to make this a condition of the lease, it has the right to enforce it without laying itself liable in damages to any one. It matters not what its motives may be in any given case. These are not to be inquired into. Since the right is absolute, it may exercise it at its pleasure, without the duty of giving reasons or otherwise explaining its conduct.

*Id.* at 603.

As in *O'Brien*, the City entered into an agreement with UP for use of the City's railway track, to which the agreement provided that the UP and its agents will not oppose the Center Parkway Crossing project. The City had an absolute right to condition access upon its property and to enforce the condition "without laying itself liable in damages to any one"; "[i]t matters not what its motives may be". *See id.* Plaintiffs simply complain that the case is dated, but it is still good law and the cases Plaintiff cite do not detract from this or its applicability to this case. In fact, while Plaintiff cites to case law discussing general principles for determining when interference is privileged, *see* ECF No. 228 at 14-17, the case of *O'Brien* presents a specific instance of these principles as applied to materially the

ORDER GRANTING MOTIONS FOR PARTIAL SUMMARY
JUDGMENT RE: TORTIOUS INTERFERENCE AND FIRST
AMENDMENT RETALIATION ~ 6

same facts, including the underlying interest and means of interference. Notably, Plaintiffs do not even attempt to distinguish this case from *O'Brien*.

Because the City's interference was privileged, Plaintiffs' claims for tortious interference against the City and Mr. Rogalsky derived therefrom are **dismissed with prejudice**. *See* ECF No. 167 at 68-69, ¶¶ 5.1-5.12, 75-76, ¶¶ 5.54-5.59.

# FIRST AMENDMENT RETALIATION

A. **Background**

The relevant facts are not in dispute. The Port of Benton (the "Port") and Scott D. Keller's Motion for Summary Judgment (ECF No. 209) concerns alleged retaliation by the Port against Plaintiffs Randolph Peterson and Tri-City Railroad Company, LLC. As the Court previously outlined:

> On August 15, 2016, "Peterson, as an individual taxpayer, filed suit against the State of Washington, Department of Revenue, and the Port [] for alleged violations of Article 8, § 7, and Article 1, § 12, of the Washington State Constitution." ECF No. 61 at 5, ¶ 4; *see* ECF No. 78-5 (complaint). In the complaint, Peterson alleged a claim for "Tax Non Collection" premised on the Port's potential liability for failing to recover [Lease Excise Tax] from the [Burlington Northern Santa Fe Railway ("BNSF") and UP who] use the trackage (without compensation) leased by TCRY. *See* ECF No. 78-5 at 13-16, ¶¶ 55-67. . . . [T]he Port later informed Plaintiffs of the Port's intention to file a third-party complaint requesting the Department of Revenue determine the LET owed by TCRY. The Port soon after informed Plaintiffs they were not going to file the claim. Plaintiffs argue this was unlawful retaliation.

ECF No. 85 at 9. As discussed more below, LET obligations are imposed as a tax on private entities leasing public property as a matter of fair compensation for

governmental services. RCW 82.29A.010.

Plaintiffs previously moved for summary judgment in their favor on their claim for first amendment retaliation. The Court denied the motion because Plaintiff did not establish the Port's retaliatory intent under the standard of review applicable for that motion. ECF No. 85. Now, the Port moves for summary judgment on the claim. ECF No. 209.

B. **Discussion**

The Port argues Plaintiffs First Amendment Retaliation claim fails as a matter of law, reasoning that the Port is immune from suit under the *Noerr-Pennington* doctrine because the complained-of threat was protected by the First Amendment right to petition the Government for redress of grievances. ECF No. 209 at 14-17. The Court agrees.

"Under the *Noerr–Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (citations omitted). In order to provide "breathing space required for the effective exercise" of the First Amendment right, the doctrine extends to conduct "incidental to the prosecution of the suit", even if the suit is never ultimately filed. *Id.* at 933-35 (quoting *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.*, 944 F.2d 1525, 1528–29 (9th Cir. 1991)). This includes

communications between the parties "so long as they are sufficiently related to petitioning activity." *Id.* at 935. For example, sending demand letters and threatening to file suit is protected conduct under the doctrine. *See id.* at 935-36; *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 645 (9th Cir. 2009).

"While the Noerr–Pennington doctrine originally arose in the antitrust context, it is based on and implements the First Amendment right to petition and therefore, with one exception [not relevant here], applies equally in all contexts." *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000). Further, the doctrine applies to both private and governmental actors. *Sanghvi v. City of Claremont*, 328 F.3d 532, 542–43 (9th Cir. 2003) (applying *Noerr–Pennington* doctrine to city defendant); *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1092-94 (9th Cir. 2000) ("This kind of petitioning may be nearly as vital to the functioning of a modern representative democracy as petitioning that originates with private citizens.").

However, among other exceptions not relevant here, the doctrine does not extend immunity to "sham" litigation. *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993). The sham litigation exception only applies if "the lawsuit [is] objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.* "Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." *Id.* If the claim is objectively baseless, the court must then consider

whether the party intended to use the "*process*—as opposed to the *outcome* of that process—as a[] weapon[.]" *See id.* at 61 (quoting *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380 (1991) (emphasis in original)).

Here, the threat to file a claim requesting a determination of LET tax obligations is clearly conduct incidental to the prosecution of a suit—the City did not have to file suit to be afforded the protections. Besides questioning its applicability to the Port, Plaintiffs apparently concede the doctrine applies to the Port's conduct. *See* ECF No. 221 at 16-17. However, Plaintiffs contend that the sham litigation exception applies because the suit was baseless.[1] ECF No. 221 at 17. The Court finds the underlying claim was *not* objectively baseless.

---

[1] Plaintiffs contend the "Court previously recognized that whether or not the [suit] was baseless is a disputed question of fact." ECF No. 221 at 17 (generally citing to ECF No. 85). This is patently false. *See* ECF No. 85. Plaintiffs otherwise contend the issue is precluded by the law of the case doctrine because the City *raised* the issue of *Noerr-Pennington* immunity in defending against Plaintiffs' previous motion for summary judgment. ECF No. 221 at 13-14. However, the law of the case doctrine clearly does not apply—the Court did not even address the issue because it was not necessary in resolving the motion. *See* ECF No. 108.

ORDER GRANTING MOTIONS FOR PARTIAL SUMMARY
JUDGMENT RE: TORTIOUS INTERFERENCE AND FIRST
AMENDMENT RETALIATION ~ 10

"The intent of the [LET] is to ensure that lessees of property owned by public entities bear their fair share of the cost of governmental services when the property is rented to someone who would be subject to property taxes if the lessee were the owner of the property." Wash. Admin. Code 458-29A-100. For lease agreements in effect over ten years without being renegotiated – as is the case here – the Department of Revenue determines taxable rent by, in essence, considering the fair market value of the leased property:

> [T]he department may establish a taxable rent computation for use in determining the tax payable under authority granted in this chapter based upon the following criteria: (i) Consideration must be given to rental being paid to other lessors by lessees of similar property for similar purposes over similar periods of time; (ii) consideration must be given to what would be considered a fair rate of return on the market value of the property leased less reasonable deductions for any restrictions on use, special operating requirements or provisions for concurrent use by the lessor, another person or the general public.

RCW 82.29A.020(2)(a), (g); *see MAC Amusement Co. v. State Dep't of Revenue*, 95 Wash. 2d 963, 968 (1981) (the text of RCW 92.29A.020 "suggests that taxable rent is at least that rent paid for similar property used for similar purposes").

Here, as the Court previously recognized, the amount of rent paid by TCRY is grossly disproportionate to the value of the leasehold. Most notably, TCRY pays a small fraction in rent (less than $12,000 per month for the trackage, a large warehouse, and railroad equipment) compared to the amount paid in 2002 to lease

the same property ($288,000 per year[2]) before the parties agreed TCRY would maintain the trackage at its sole expense. While Plaintiffs' point to a decision that maintenance expenditures are not included in determining *the contract rate*, this is essentially irrelevant. What matters is the fair rental value. And while Plaintiffs point out that the lease is for the non-exclusive use of the trackage, ECF No. 221 at 20, it is beyond credible to argue the paltry amount of money paid in rent is remotely close to the fair rental value, especially in light of the fact the 2002 contract rate was for the same, non-exclusive use of the trackage.[3] Plaintiffs' other complaints are completely without merit.

      Having determined the claim was not objectively baseless, the Port is entitled to summary judgment on Plaintiffs' First Amendment Retaliation claim.

//

//

//

//

---

[2] The value currently is undoubtedly significantly higher. At oral argument, counsel for the Port represented the annual rental value is near $1.2 million.

[3] UP and BNSF had contract rights to the trackage since the 1950s and the Port acquired the trackage subject to those rights.

ORDER GRANTING MOTIONS FOR PARTIAL SUMMARY
JUDGMENT RE: TORTIOUS INTERFERENCE AND FIRST
AMENDMENT RETALIATION ~ 12

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant the City of Richland's Motion for Summary Judgment Re: Tortious Interference (ECF No. 199) is **GRANTED**.

2. Defendant the Port of Benton and Scott D. Keller's Motion for Partial Summary Judgment Re: First Amendment Retaliation (ECF No. 209) is **GRANTED**.

The District Court Executive is directed to enter this Order and furnish copies to the parties.

**DATED** December 20, 2019.



THOMAS O. RICE
Chief United States District Judge