UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RANDOLPH PETERSON, individually; TRI-CITY RAILROAD COMPANY, LLC, a Washington limited liability company,<br><br>                      Plaintiffs,<br><br>   v.<br><br>PORT OF BENTON COUNTY, et al.,<br><br>                      Defendants. | NO. 2:17-CV-0191-TOR<br><br>ORDER GRANTING PORT OF BENTON'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE SOUTHERN CONNECTION ACCESS |

BEFORE THE COURT is Defendant Port of Benton's Motion for Partial Summary Judgment Re: Southern Connection Access (ECF No. 250). The Motion was submitted without a request for oral argument. Plaintiffs Randolph Peterson and Tri-City Railroad Company, LLC, oppose the Motion. The Court has reviewed the record and completed briefing, and is fully informed. For the reasons discussed below, the Motion (ECF No. 250) is **granted**.

## STANDARD OF REVIEW

A movant is entitled to summary judgment if "there is no genuine dispute as to any material fact and [] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it might affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is "genuine" where the evidence is such that a reasonable jury could find in favor of the non-moving party.  *Id.*  The moving party bears the "burden of establishing the nonexistence of a 'genuine issue.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  "This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party."  *Id.*

In deciding, only admissible evidence may be considered.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).  Mere allegations or denials in the pleadings are not enough.  *Liberty Lobby*, 477 U.S. at 248.  Further, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor."  *Id.* at 255.  However, the "mere existence of a scintilla of evidence" will not defeat summary judgment.  *Id.* at 252.  Per Rule 56(c), parties must support assertions by "citing to particular parts of the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

## DISCUSSION

Defendant requests summary judgment against Plaintiffs' claims "premised on the Port allowing BNSF and UP to use the Southern Connection without compensating TCRY." ECF No. 250 at 7. Defendant asserts the claims are barred by the doctrines of issue and claim preclusion and that TCRY does not otherwise have a § 1983 claim based on such conduct. ECF No. 250. Plaintiffs do not address the § 1983 argument, so the claim is waived. *See* ECF Nos. 267; 290 at 8.

Plaintiffs assert the Port is "attempt[ing] to reinvent Plaintiffs' damage theory" clarifying that "Plaintiffs have been damaged as a result of the Port's intentional breaches of the 2002 Railroad Lease and its efforts to terminate TCRY as a going concern." ECF No. 267 at 2. Plaintiffs allege "[t]he Port damaged TCRY when it breached the 2002 Railroad Lease in three distinct ways: (1) fabricated a default against TCRY in an undisputed effort to get rid of TCRY; (2) filed for an adverse discontinuance in an effort to take TCRY's rights in the 2002 Railroad Lease; and (3) refused to approve of any tariffs." *Id*. Plaintiffs assert that, "[i]n this regard, TCRY's damages arise from the Port eliminating the benefit of the bargain — the ability to make a profit on the leasehold." ECF No. 267 at 2-3.

As an initial matter, Plaintiffs have failed to identify a cause of action based on the alleged "efforts to terminate TCRY as a going concern", so the Court need

not address this vague contention.  Notably, this appears to relate to Plaintiff's claims based on alleged retaliation.  As discussed below, the remaining complaints under the breach of contract do not give rise to a cause of action.

Plaintiffs allege the Port falsely asserted TCRY was in default of the 2002 Lease.  ECF No. 267 at 11.  In support, Plaintiffs point to a notice of default sent on March 16, 2018 by the Port in which the Port claims TCRY is in breach for "deferred maintenance".  ECF No. 267 at 11.  However, Plaintiffs make no effort to explain how sending the notice of default would amount to a breach of the 2002 Lease or how Plaintiffs were harmed from the allegedly fabricated default.  Notably, Plaintiffs have all but admitted they are in default of the lease agreement by previously arguing the Port was failing to maintain the trackage in the past *when TCRY was contractually obligated to maintain the trackage*.  *See* ECF No. 196 at 11 (finding it ironic Plaintiffs accused the Port of committing fraud by failing to maintain the trackage when Plaintiffs were under contract with the Port to complete the maintenance (citing ECF No. 168 at 10-11)).

As for the filing for an adverse discontinuance, Plaintiffs assert that, "[o]n February 22, 2019, the Port filed an Adverse Application for Discontinuance of Rail Service with the STB."  ECF No. 267 at 14.  This allegation appears to be beyond the scope of the Fourth Amended Complaint, so the Court need not address this contention.  *See* ECF No. 167.  Irrespective, Plaintiffs note that the approval of

the application does not, alone, prevent TCRY from continuing to operate. ECF No. 267 at 15, ¶ 6 ("granting of the Port's application for adverse discontinuance alone does not prevent Tri-city from continuing to operate; there would have to be, for example, an adverse court judgment evicting Tri-City from the Line"). Rather, Plaintiffs maintain that "if the Port is successful in evicting TCRY from the Southern Connection, TCRY will lose its status as a common carrier by rail." ECF No. 267 at 15. Accordingly, Plaintiffs have not identified any actual harm. Finally, Plaintiffs have not identified how this would be a breach of the 2002 Lease Agreement.

With respect to the Port not approving tariffs, Defendant rightly notes the allegation is not included in the operative complaint. Indeed, Plaintiffs included the allegation in their Third Amended Complaint, but the Court found the allegation was added without leave of the Court and struck the Third Amended Complaint. ECF No. 165 at 11. In any event, it is indisputable that UP and BNSF had rights to use the Southern Connection and the Port obtained the property – and TCRY leased the property – subject to these pre-existing rights. *BNSF Ry. Co. v. Tri-City & Olympia R.R. Co. LLC*, No. CV-09-5062-EFS, 2012 WL 12951546, at *8 (E.D. Wash. Feb. 14, 2012); *see* ECF Nos. 148 at 15; 152-4 at 4. Even if the Port had the authority to approve tariffs, Plaintiffs do not point to any provision in the 2002 Lease Agreement requiring the Port to approve tariffs. Rather, Plaintiffs

simply assert that because TCRY was able to impose tariffs before *when it was operating under a different contract in 2000*, it should be able to do so now. *See* ECF No. 267 at 5-6, ¶¶ 5, 10 (TCRY assumed the "Port would continue to honor its past practice and commitments" in the 2002 lease). Plaintiffs have no foot to stand on—the 2002 Lease Agreement was not a simple continuation of the previous agreements in which it may be reasonable to presume certain conditions may remain the same. Rather, the Parties significantly altered the framework of the previous agreement in having TCRY cover the cost of maintenance in return for a significant reduction in the cost of rent.

Defendant is entitled to summary judgment on all claims "premised on the Port allowing BNSF and UP to use the Southern Connection without compensating TCRY." ECF No. 250 at 7.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Defendant Port of Benton's Motion for Partial Summary Judgment Re: Southern Connection Access (ECF No. 250) is **GRANTED**.

The District Court Executive is directed to enter this Order and furnish copies to the parties.

**DATED** February 13, 2020.



THOMAS O. RICE
Chief United States District Judge

ORDER GRANTING PORT OF BENTON'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE SOUTHERN CONNECTION ACCESS ~ 6